## BURBANK v DALY MANUFACTURING COMPANY

Ohio Appeals, 1st Dist, Hamilton Co

No 3717. Decided Dec 1, 1930

Messrs. Heintz & Heintz, Cincinnati, for plaintiff in error.

Messrs. Peck, Shaffer & Williams, Cincinnati, for defendant in error.

ROSS, J.

The facts are as follows: The contract was predicated upon the following agreement:

"To whom it may concern:

We have authorized Oberst Burbank to finance our business.

Any courtesies extended to him will be appreciated by us.

Very truly,

THE DALY MANUFACTURING CO.,

C. W. Stricker, Pres."

The plaintiff testified:

"x x x I said, Mr. Stricker, it looks very much as if Mr. Green is getting into this company, he is absolutely satisfied. Then I said, "Mr. Stricker, it has come to the time when we could fix my compensation in this matter. You know the condition and terms under which I am working. You know I told you when we began this thing that I could not fix my compensation until I found a suitable party to get in." He said, "what do you want?" I said, "considering everything in general about it, I fix my compensation at $3,000.00."

"Q. What did he say?

"A. "That is all right", and then he said, "now, we have fixed a value of $16,-000.00 on our present assets, and we owe 313,000, there will be $3,000.00 left and that can be used in paying you your fee. That is all right, he said, and I said, 'that is all right, we agree on that then I will go ahead.' "

The company previous to the authorization given the plaintiff was in financial straits and needed money. The activity of plaintiff resulted in the purchase of stock by James Albert Green from Runck, who had secured his stock from other stockholders and through no act of plaintiff. After Green came into the company it was reorganized, its capital stock increased, preferred stock issued and sold and the company was put in a sound financial condition. The assets were not sold. It is contended by the plaintiff that there was evidence to go to the jury indicating the existence of a contract to pay $3,000 for the financing of the company, and the performance and breach of this contract.

The defendant takes the position that the promise, if any, to pay $3,000.00 was to pay for the sale of the assets, and they were

not sold, and that the plaintiff was not instrumental in financing the company, but only succeeded in interesting James Albert Green, under whose direction and that of his associates who came into the company through the purchase of stock from stockholders, the company was financed.

If these opposing constructions of the evidence are questions of fact, the case should have been submitted to the jury. If these facts present no evidence of performance on the part of the plaintiff of his contract to finance the company, then the court was correct in instructing a verdict for the defendant.

Through the unassisted efforts of plaintiff, Green was brought into the company, resulting in its reorganization and refinancing. There is evidence that previous to the completion of plaintiff's efforts the defendant through its officers agreed to pay him $3,000 as his compensation. While a part of plaintiff's testimony would seem to indicate that a sale of the assets was contemplated, such construction is not clear, and is met by other evidence indicating clearly that a new capitalization was contemplated.

We quote from a statement of the defendant as to its proposed plan:

"Our present corporation is capitalized for the low amount of ten thousand dollars which is fully inadequate. Our plan is to increase this capitalization to one hundred thousand dollars, issuing twenty-five thousand dollars for the present assets of the Company, sell thirty-five thousand dollars worth for purposes of expansion and liquid capital and forty-thousand dollars to' remain in the treasury for the purpose of securing a suitable ground floor building."

The plaintiff testified that he had informed the defendant at the time the authorization was given that he could not fix his compensation until he found a suitable party, but it would not be more than ten per cent of the amount of finance secured. It is manifest that the company was in sad financial straits, that the plaintiff busied himself with its affairs, that it was put in good financial condition, that no one else was instrumental in this result except Green, who was a step to the conclusion desired by all parties.

It is contended that Runck contributed finances, but the evidence shows that it was not until Green took hold that a refinancing of the Company took place.

On cross-examination, testimony of plaintiff at the first trial was injected into the case by impeaching questions. Even if the testimony of plaintiff at the first trial had been to the effect that compensation was predicated upon a sale of the assets of the company, "lock, stock and barrel", which we do not find was the case, the plaintiff in the instant trial emphatically denied such to be the case. Giving the previous testimony its full effect, it went merely to the credibility of plaintiff—a question patently for the consideration of the jury.

Thus viewing the evidence, we hold there was not only some evidence to go to the jury, first, of the existence of a contract providing for the financing of the company by plaintiff; second, of the promise to pay $3,000 for such services; third, that there was a performance by plaintiff of his contract, but that there was sufficient evidence to sustain a verdict for plaintiff.

The judgment will be reversed, and the cause will be remanded for a new trial.

HAMILTON, J, concurs.